Arthur J. Morris v. Commissioner.
Morris v. Commissioner
Docket No. 29320.
United States Tax Court
1952 Tax Ct. Memo LEXIS 217; 11 T.C.M. (CCH) 492; T.C.M. (RIA) 52145; May 16, 1952
David Alter, Esq., for the petitioner. Paul M. Stewart, Jr., Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined a deficiency in gift tax for the year 1946 in the amount of $1,935. The only question is the fair market value of stock of the Industrial Bank of Commerce as of January 19, 1946, the date of the gift which is involved in this proceeding. The petitioner filed a gift tax return for the year 1946 with the collector of the third district of New York. Findings of Fact The petitioner is a resident of Ossining, New York. On January 19, 1946, he made a gift in trust of 2,000 shares of the capital stock of the Industrial Bank of Commerce, which was known as the Morris Plan Bank of New York prior to January 1, 1946, hereinafter *218 called the Bank. The outstanding capital stock of the Bank amounted to 200,000 shares on January 19, 1946, and at all times prior to such date which is relevant in this proceeding. The capital stock was held as follows: No. of Shares
% of Total
Brokers and General Pub-
lic
36,928
18.3%
Morris Plan Corporation
of America
126,188
63. %
Directors of Bank and for
Parent
13,394
6.7%
Mr. A. J. Morris and
Family
23,490
12. %
200,000 More than 80 per cent of the stock of the Bank was closely held. The stock was held by approximately 353 stockholders. The parties have stipulated that "There is a thin market for the Bank stock and it is not actively traded." Petronio & Co., a curb exchange firm, is the recognized specialist in buying and selling the stock of the Bank. Its records for the period November, 1945, through February, 1946, show the following number of transactions in the stock of the Bank during November and December of 1945 and January and February of 1946, the number of shares traded, and the selling price. No. of
Shares
No. of
Traded
Trans-
in Each
Month
actions
Transaction
Price
1945 November
1
50
$27.75
December
6
100
29.00
20
29.25
25
30.00
10
30.00
100
30.00
25
31.50
1946 January
4
25
31.00
10
31.50
50
32.00
45
31.66
February
2
50
35.00
13
35.00
*219 In 1944, a block of 16,025 shares of the Bank's capital stock was offered for sale at the highest price. The stock exchange firm of Montgomery, Scott & Co. and the curb exchange firm of Petronio & Co. tried to sell these shares. Despite their efforts to sell said block of 16,025 shares, the highest price offered was $16.50 per share, at which price 10,025 shares were finally sold to the parent, The Morris Plan Corporation of America, and the remaining 6,000 shares were sold to Mr. A. J. Morris. In 1945, 1900 shares of the Bank's capital stock were offered for sale. The highest price offered for said shares was $19.00 per share and said shares were finally sold at that price to the parent, The Morris Plan Corporation of America. The following schedule sets forth the Bank's net operating earnings per share and its earnings available for dividends per share (inclusive of non-recurrent profits from defaulted railroad securities and Government bonds) for the years 1941 through 1945, inclusive. 1941
1942
1943
1944
1945
Net Operating Earnings (per share)
2.32
1.25
.36
(.17)
.87
Earnings Available for Dividends (Inclusive of Non-
Recurrent Profits from Securities) (per share)
2.97
2.13
1.29
1.33
2.93
*220 The book value per share as at 12/31 and the ratio of deposits to capital funds for the years 1941 through 1945, inclusive, were as follows: 1941
1942
1943
1944
1945
Book Value as at 12/31
20.41
21.04
21.33
21.66
23.21
Ratio of Deposits to Capital Funds
14.24
13.44
12.17
9.77
7.24
The fair market value of the gift stock of 2,000 shares on January 19, 1946, was $40,000, the stock having a fair market value on the date of the gift of $20 per share. Opinion The question to be decided is the fair market value of 2,000 shares of stock of the Industrial Bank of Commerce on January 19, 1946, for the purpose of gift tax. The respondent has determined that the stock had a fair market value on the date of gift of $30 per share. The petitioner contends that the value did not exceed $16.50 per share. The question is a question of fact. Upon consideration of all the evidence it has been found that the fair market value of the gift stock was $40,000 on the basis of the value of $20 per share on the date of the gift. Consideration has been given to the factors which are set forth in section 86.19 of Regulations 108; to the market for this stock *221 at about the time of the gift, both before and after; to the actual sales of stock of about the time of the gift; to the size of the block of stock involved in the gift; to the expert testimony which has been given to the Court in this proceeding; and to all other matters of record. The respondent did not present the testimony of any expert witness on the fair market value of the stock. He relies chiefly upon sales of stock in the latter part of 1945, but he has given too little weight to the fact that the actual market transactions involved very small lots of stock. It has been stipulated that the stock of the Bank was closely held; that the stock was unlisted and was inactive on the curb market; and that the market for the stock was thin. Although actual sales are the best evidence of the fair market value of stock, other factors are properly considered, and where the stock to be valued is a block of stock it is proper to consider whether the size of the block of stock could be sold on the market at the prices obtained in transactions involving small lots of stock. ; ; and . *222 Upon all of the evidence, it is our best judgment that the fair market value of a block of 2,000 shares of stock of the Industrial Bank of Commerce did not exceed $40,000, or $20 per share, on January 19, 1946. The respondent's determination is reversed. Decision will be entered under Rule 50